UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

S. B.[1],

Petitioner,

v.

SAMAIA FERETI et al.,

Respondents.

Case No. 5:26-cv-04616-MAR

**MEMORANDUM AND ORDER GRANTING HABEAS PETITION AND ORDERING IMMEDIATE RELEASE**

## I.

## INTRODUCTION & PROCEDURAL HISTORY

On February 18, 2026, Petitioner Said Boules ("Petitioner"), an immigration detainee, filed, through counsel, a Petition for Writ of Habeas Corpus by a Person in Federal Custody pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention at the Adelanto Detention Center. Dkt. 1 ("Pet."). Respondents filed an answer on August 21, 2026. Dkt. 8 ("Answer"). Petitioner filed a reply on August 24, 2026. Dkt. 9, ("Reply"). On November 18, 2026, Petitioner filed a Motion for Temporary Restraining Order ("TRO") and Order to Show Cause re: Preliminary Injunction. Dkt. 12. The parties have consented to proceed before the undersigned Magistrate Judge. See Dkt. 6.

[1] Petitioner's request to proceed pseudonymously is GRANTED. The Clerk is directed to adjust the docket so as to allow Petitioner to proceed as such.

For the reasons discussed below, the Petition is **GRANTED and** Respondents are **ORDERED** to immediately release Petitioner **S. B. (A Number 240-779-768)**.

## II.

## FACTUAL BACKGROUND

Petitioner is a national and citizen of Egypt. Pet. at 14. Petitioner has three children, one of whom is a United States citizen. Id. Petitioner entered the United States in December 2021 under a B-2 visa. Id. Petitioner's wife filed for asylum in March 2022 and Petitioner and his children are dependents on the application. Id. Petitioner received work authorization and worked lawfully. Id. Petitioner was arrested for making criminal threats against his spouse and misdemeanor child endangerment in November 2023, and he was subsequently released on bail. Id. at 15. Petitioner and his family have been living "harmoniously and without incident at the family home" since Petitioner was released on bail. Id. at 17. Petitioner was detained by Respondents on May 30, 2026. Id. at 15. Petitioner did not receive pre-deprivation notice or an opportunity to be heard prior to his detention.

On June 24, 2026, Petitioner had a bond hearing wherein Respondents presented an inaccurate I-213 document, id. at 17; Answer at 2, n.1, and the Immigration Judge ("IJ") denied bond, finding Petitioner to be a danger based on his November 2023 arrest, see Dkt. 8-1 at 1.

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner argues that his arrest and detention violate his Fifth Amendment due process rights because he did not receive notice and a pre-deprivation hearing prior to his detention and because the bond hearing he received was constitutionally deficient. Pet. at 30–33. Petitioner also argues that Respondents violate the Administrative

Procedure Act by acting arbitrarily, capriciously, and contrary to law in providing him a constitutionally deficient bond hearing. Id. at 33.

Based on these claims, Petitioner seeks his immediate release from detention. Id. at 34. In the alternative, Petitioner seeks a constitutionally compliant bond hearing. Id. Petitioner also requests costs and fees pursuant to the Equal Access to Justice Act.

Respondents argue that Petitioner has failed to exhaust administrative remedies and that the Court should not "reweigh" the evidence considered by the IJ. See Answer.

The Court finds that Petitioner's detention—without any meaningful pre-deprivation notice or an opportunity to be heard—violates due process. The Court further finds that the bond hearing provided by Respondents failed to mitigate the substantial risk of erroneous deprivation of Petitioner's liberty. Accordingly, the Court orders that the Petition be granted and a writ of habeas corpus be issued requiring Petitioner's immediate release and preventing his re-detention absent pre-deprivation notice and a hearing.

## III.

## LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.' "). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004); Bellew v. Gunn, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## IV.

## DISCUSSION

### A. DUE PROCESS

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." Demore v. Kim, 538 U.S. 510, 523 (2003) (citing Reno v. Flores, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990).

In several recent decisions, courts in this district have found that immigration authorities violated or likely violated due process by re-detaining, without notice or an opportunity to be heard, noncitizens who had been detained and released shortly after their entry to the United States. See Cruz v. Lyons, et al., No. 5:25-cv-02879-MCS-MBK (C.D. Cal. Nov. 6, 2025) at Dkt. 12 (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); Yataco v. Warden, Adelanto Det. Facility, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), adopted, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition of noncitizen who had been paroled and was re-arrested at ICE check-in); see also M.V.F. v. Santacruz, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

As in these cases, the Court considers Petitioner's procedural due process claim under the familiar framework set forth in Mathews v. Eldridge, 423 U.S. 319 (1976), which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. Mathews, 423 U.S. at 335.

**B. ANALYSIS**

**1. Jurisdiction and exhaustion**

"Claims that the discretionary bond process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of [28 U.S.C.] § 2241." Hernandez v. Sessions, 872 F.3d 976, 987 (9th Cir. 2017) (internal alterations omitted). Petitioner challenges the constitutionality and sufficiency of the process by which he was arrested and detained, and the constitutionality of his continued detention. This court has habeas jurisdiction under § 2241 to consider these constitutional claims. See Hernandez, 872 F.3d at 987; Noori v. LaRose, 807 F. Supp. 3d 1146, 2025 WL 2800149, at *5–8 (S.D. Cal. 2025) (finding district court had habeas jurisdiction to consider a petition challenging the lawfulness of the detention and revocation of parole of an asylum seeker); Magomed Mumaev, Petitioner, v. Fereti Semaia, et al., Respondents., No. 5:25-CV-03409-FLA (MAR), 2026 WL 530765, at *2 (C.D. Cal. Feb. 20, 2026) (same); see also N.A. v. Warden, Adelanto Det. Facility, 2026 WL 734585 (C.D. Cal. Mar. 12, 2026) (citing Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024)) (discussing jurisdiction to review constitutionality of bond hearing). Courts review constitutional challenges to bond determinations under an "abuse of discretion" standard. See C.A.R.V. v. Wofford, 2026 WL 241823, at *3 (E.D. Cal. Jan. 29, 2026) ("In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an 'abuse of discretion' standard."); Martinez, 124 F.4th at 784 ("When questions require a close review of agency-found facts, like the 'dangerousness' determination, we review for an abuse of discretion."). Abuse of discretion review "is limited to whether the IJ's decision reflects clear legal error or is unsupported by sufficient evidence." C.A.R.V., 2026 WL 241823, at *3 (internal quotation marks omitted).

As a threshold matter, the Court will address the issue of administrative exhaustion. "When a petitioner does not exhaust administrative remedies, a district

court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011). In the context of a habeas petition, however, the administrative exhaustion requirement is prudential, not mandatory or jurisdictional. See Y.S.G. v. Andrews, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025) ("The federal habeas statute under which this case was filed does not require exhaustion of administrative remedies.") (emphasis added). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation omitted). A petitioner is not required to exhaust administrative remedies, however, where such remedies would be inadequate, where exhaustion would be futile, or where irreparable harm would result. Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004); see also Vasquez-Rodriguez v. Garland, 7 F.4th 888, 896 (9th Cir. 2021) ("In the immigration context, . . . [w]e will excuse a failure to exhaust if it is very likely what the Board's result would have been. Thus, where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required." (internal quotation marks and citations omitted); Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 961–962 (N.D. Cal. 2019) (waiving exhaustion requirement and noting the BIA lacks jurisdiction to decide constitutional questions regarding immigration laws); Wang v. Reno, 81 F.3d 808, 814 n.8 (9th Cir. 1996) (per curiam) ("[T]he design of the [Immigration and Nationality Act] does not suggest that Congress has considered and provided mechanisms to remedy the constitutional violations alleged . . . . Congress could not have intended for the INA to redress constitutional violations when neither the IJ nor the BIA has jurisdiction to hear such claims.").

Here, there are several reasons to waive the exhaustion requirement. First, the Puga factors do not favor exhaustion because, on an appeal to the BIA, "it is not clear to the Court what information the BIA would have at its disposal beyond what has been provided on this Application." Diana Carolina Rivera Mendoza v. Kristi Noem, et al., No. CV 25-3227-MWF(AGR), 2026 WL 923311, at *5 (C.D. Cal. Apr. 1, 2026). The record establishes the circumstances of Petitioner's arrest and detention. The BIA would not, therefore, be in any "better position to review" the question at issue. Id. More fundamentally, Petitioner raises a constitutional claim regarding his arrest and detention, and "[c]learly the BIA has no jurisdiction to decide questions of the constitutionality of the immigration laws." Liu v. Waters, 55 F.3d 421, 426 (9th Cir. 1995); Wang, 81 F.3d at 814 n.8; Marroquin Ambriz, 420 F. Supp. 3d at 961. "As the BIA has explained, it 'must apply the statute as written to the cases that come before us. It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer . . . . [E]ven if we were to perceive a constitutional infirmity in the unambiguous statute before us, we would be without authority to remedy it." Id. (citing In Re Fuentes-Campos, 21 I. & N. Dec. 905, 912 (BIA 1997)). Furthermore, and notwithstanding "the BIA's general subject-matter expertise in individual immigration bond decisions", "a constitutional challenge to the adequacy of his bond hearing . . . is better suited to review by the federal courts." W.T.M., 2026 WL 262583, at *2. Review by the BIA would not, therefore, be "likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga, 488 F.3d at 815.

Even where the Puga factors do weigh in favor of requiring exhaustion, waiver of the requirement may still be warranted if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing, 370 F.3d at 1000. The alleged "violation of Petitioner's due process rights is sufficient to satisfy the irreparable harm requirement." Doe v. Becerra, 787 F. Supp. 3d 1083,

1095 (E.D. Cal. 2025). And, even where, as here, a petitioner has appealed a bond determination to the BIA, "requiring Petitioner to be subjected to unlawful detention pending the BIA's decision would [also] cause irreparable harm." Rodriguez Cabrera v. Mattos, 808 F. Supp. 3d 1159, 1176 (D. Nev. 2025); Y.S.G., 2025 WL 2979309, at *7 ("[P]etitioner has adequately demonstrated that irreparable injury will result if he has to await the outcome of his BIA appeal."). In other words, even if the BIA were to ultimately reverse the IJ's decision denying bond, that would not afford Petitioner an adequate remedy for his prolonged detention in the interim. "[B]ecause of delays inherent in the administrative process, BIA review would result in the very harm that the bond hearing was designed to prevent: prolonged detention without due process during lengthy and backlogged removal proceedings." Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) (citation modified); see also Diana Carolina Rivera Mendoza, 2026 WL 923311, at *5 (concluding that because "the Ninth Circuit's decisions . . . preclude as a matter of law any ruling that the IJ correctly applied the clear and convincing evidentiary standard[, t]o require Petitioner to appeal to the BIA would be a futile gesture, and would instead needlessly prolong Petitioner's detention."). Here, to require Petitioner to pursue futile or inefficacious administrative remedies would cause him irreparable injury. The administrative exhaustion requirement is, therefore, appropriately waived here, and does not bar the instant Petition.

**2. Due process violation**

It is undisputed that Petitioner entered the United States in 2021, applied for asylum in 2022, received work authorization, and has established a community in the United States. Based on these undisputed facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on the length of time he lived in the United States, the ties he built to the community over the past five years, and the fact that the government affirmatively chose not to detain

Petitioner when he filed an asylum application.[2] See Kharitonova v. Albarran, No. 3:26-CV-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release her, it made a decision not to detain her in the first place [when she filed an asylum application and lived in the United States for 13 years]; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."); see, e.g., Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) (same); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Hurd v. D.C., Gov't, 864 F.3d 671, 683 (D.C. Cir. 2017) ("a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated.").

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. See Mathews v. Eldridge, 424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the

[2] This interest is further strengthened by the undisputed fact that Petitioner was arrested in 2023, but that Respondents did not detain him until two and a half years after he was released from custody. Therefore, it is not clear that there were any "changed circumstances" that may have warranted Petitioner's immigration detention. See Silva Rueda v. Catletti, No. 26-CV-2977 (VSB), 2026 WL 1194956, (S.D.N.Y. May 1, 2026) ("despite the Government's conceded knowledge of the criminal charges"—in this case, of strangulation and assault resulting in a protective order against him, in favor of his wife— the "Government took no further action to arrest Petitioner until his routine check in two months later." Mere knowledge of criminal charges, even when coupled with an arrest warrant and one sentence re a "targeted decision," "do[] not evidence any individualized discretion exercised by ICE in advance of Petitioner's detention, as required by law. . . . Accordingly, Petitioner's detention violates his due process rights … Thus, the Government must immediately release [Petitioner] from detention.")

following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

All three factors support a finding that the government's arrest of Petitioner without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. See Garcia, 2026 WL 194745, at *3. First, freedom from imprisonment is at the "core of the liberty protected by the Due Process Clause." Hernandez, 872 F.3d at 993 (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). As discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to Respondents affirmative decision not to detain Petitioner for years following the filing of his asylum application. See Kharitonova, 2026 WL 531441, at *2.

With respect to the second Mathews factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive— or already has erroneously deprived—Petitioner of his liberty interest absent a pre-detention hearing." Cruz, No. 5:25-cv-02879, Dkt. 12 at 7. The fact that Petitioner received a post-deprivation bond hearing, after his re-detention by immigration authorities, does not remedy the violation of Petitioner's procedural due process rights. See, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of

his motion: that is, his potentially erroneous detention.”); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) (“Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing.”), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez, 2025 WL 2959319, at *6 (“On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained.”); Zinermon, 494 U.S. 113, 127 (“Generally, the Due Process Clause ‘requires some kind of a hearing before the State deprives a person of liberty or property.’”)

Indeed, “an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner’s continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner’s due process rights and, thus, invalid.” Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 (C.D. Cal. May 14, 2026) (citing Mumaev, 2026 WL 530765, at *6; Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf’t, No. 5:26-CV-01404-DOC-MAR, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 5:26-cv-01414-ACCV, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)). This is especially so where a post-deprivation bond hearing is itself constitutionally deficient. As discussed above, this Court reviews mixed questions of law and fact, such as that presented by a challenge to a dangerousness determination by an IJ, under a deferential “abuse of discretion” standard. See Martinez, 124 F.4th at 784. Nevertheless, when the decision of an IJ is “arbitrary, irrational, or contrary to law,” it is an abuse of discretion. Bonilla v. Lynch, 840 F.3d 575, 581 (9th Cir. 2016) (quoting Avagyan v. Holder, 646 F.3d 672, 678 (9th Cir. 2011)). In an abuse-of-discretion challenge to a determination by an IJ as to whether to grant release on bond, there are at least two ways to challenge whether the IJ applied the correct standard of proof. “First, a challenge may be based on the

contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion. Second, it may be clear from the adjudicator's opinion itself that he simply did not apply the correct standard to the facts." Hechavarria, 358 F. Supp. 3d at 240 (citations omitted). In other words, "[i]n reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence" because "review is limited to whether the IJ's decision reflects clear legal error or is unsupported by sufficient evidence." Quan v. Barr, No. 20-CV-8118, 2021 WL 308610, at *4 (N.D. Cal. 2021) (citation modified); see also Martinez, 124 F.4th at 784 ("[A]buse of discretion" review in this context does not permit "reweigh[ing] evidence."). Here, Petitioner argues, and Respondents do not contest, that the IJ abused his discretion during Petitioner's bond hearing. Soleimani v. Larose, No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) ("By failing to respond to the claims actually asserted, Respondents have conceded the claims."); Ahuacama v. Warden, No. 5:26-cv-01900-DSR, 2026 WL 1250262, at *2 (C.D. Cal. May 1, 2026) ("[C]ourts in this Circuit have regarded such silence as a concession.").

The IJ found Petitioner to be a danger based on the arrests alleged in Respondents' I-213 document. See Dkt. 1-1, Ex. D (Order of the Immigration Judge). Petitioner argues that the IJ failed to apply the correct legal standard for three reasons. First, Petitioner argues, and Respondents do not contest, that the IJ relied exclusively on Petitioner's arrests as alleged in the I-213 and FBI rap sheet to find Petitioner a danger. Pet. at 22; see Dkt. 1-1, Ex. D. There was no other evidence presented regarding Petitioner's arrests or dangerousness. The BIA has held that dangerousness determinations must rest on evidence that is "probative and specific," see Matter of Guerra, 24 I&N Dec. 37, 40-41 (BIA 2006), and courts in the Ninth Circuit have routinely held that an arrest, without any further evidence of the underlying circumstances, fails to provide "probative and specific" evidence of dangerousness. See Ortega-Rangel v. Sessions, 313 F. Supp. 3d 993, 1004–5 (N.D.

Cal. 2018); Ji v. Warden, No. 1:26-CV-03442 DJC SCR, 2026 WL 1733618, at *6 (E.D. Cal. June 16, 2026); Lu v. Divver, No. 26-CV-781-JES-DEB, 2026 WL 1755174, at *5–6 (S.D. Cal. June 2, 2026).

Second, Petitioner argues, and Respondents concede, that the evidence presented in the I-213 was materially inaccurate. Pet. at 24; Answer at 2, n.1. The 1-213 and FBI rap sheet reflected that Petitioner had multiple felony charges, see Dkt. 1-1, Ex. B (I-213), Ex. C (FBI rap sheet), while Petitioner only has one felony charge, and the remaining charges are misdemeanors, see Pet. at 24; Dkt. 1-1, Ex. E (Information filed in Superior Court of California, County of Riverside). Specifically, the FBI rap sheet and I-213 indicate that Petitioner was arrested for felony child abuse; however, this is not the case. See Dkt. 1-1, Ex. E. "There cannot be a correct application of a standard to a set of facts when the facts relied on are incorrect." Castro v. Mattos, No. 2:26-CV-1283-ART-NJK, 2026 WL 1759561, at *3 (D. Nev. June 18, 2026). Here, the IJ clearly relied on incorrect facts which further highlights the lack of "probative and specific" evidence of Petitioner's dangerousness. See Dkt. 1-1 at 22 ("The charges themselves are all charged as felonies."), id. (referring to "various serious felony charges").

Third, Petitioner argues, and Respondents do not contest, that the IJ failed to mention or consider highly probative evidence regarding Petitioner's lack of dangerousness. Particularly, the IJ refused to allow Petitioner's wife, the alleged victim of Petitioner's allegedly dangerous conduct, to testify regarding Petitioner's bond request. See Pet. at 25. While that decision is within the IJ's discretion, the Court notes that the IJ opined that Petitioner had the burden of showing his lack of dangerousness but that the IJ was "unable to meaningfully evaluate the danger to the community based on [Petitioner's] refusal to provide information related to the pending charges." Dkt. 1-1, Ex. C. An immigration judge has "broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative." Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024). However, the

Ninth Circuit has also explained that an immigration judge "abuses its discretion when it fails to consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for [its decision]." Franco-Rosendo v. Gonzales, 454 F.3d 965, 966 (9th Cir. 2006) (internal quotation marks omitted); see also Barrera-Leyva v. Immigr. and Naturalization Serv., 653 F.2d 379, 380 (9th Cir. 1981) (stating that the immigration judge abused its discretion by "fail[ing] to consider all of the relevant factors"). Here, the IJ failed to do so. The IJ did not mention or discuss the evidence of "Petitioner's stable residency, lengthy employment, the high regard by which his supervisors and coworkers hold him, fixed address – a home with a mortgage, family and community ties, and being free on bail in the Riverside County case, living together with his family without any allegations or offenses [] for two and one half years." Pet. at 23. While the IJ is not required to "discuss each piece of evidence submitted," an IJ's "fail[ure] to mention highly probative or potentially dispositive evidence" is a "red flag[ ]" that undermines the assumption that the IJ considered the evidence and applied the correct standard. Martinez, 124 F.4th at 785.

Accordingly, based on Respondents' arrest of Petitioner without pre-deprivation process or a constitutionally sufficient post-deprivation bond hearing, the Court finds the risk of an erroneous deprivation of Petitioner's liberty interest is substantial. Garcia, 2026 WL 194745, at *2; Sachin Sachin v. Warden of the Desert View Facility, et al., No. 5:26-cv-00707-MWC-ADS, 2026 WL 855741 (C.D. Cal. Feb. 21, 2026) (C.D. Cal. Feb. 21, 2026) ("a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief."); E.A. T.-B., 795 F. Supp. 3d at 1324 ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.").

As to the third Mathews factor, the government's interest in detaining Petitioners without notice, reasoning, and a hearing is low. See Pinchi, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); Cruz, No. 5:25-cv-02879, Dkt. 12 at 7 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" Sun v. Santacruz, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (quoting Doe v. Becerra, 87 F. Supp. 3d at 1094. "In immigration court, custody hearings are routine . . . ." Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. See Garcia, 2026 WL 194745, at *3.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in his unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Government's re-detention of Petitioner without adequate process violated due process.

**3. Remedy**

The Supreme Court has repeatedly emphasized that "[h]abeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release." Munaf v. Geren, 553 U.S. 674, 693 (2008) (citing

Preiser v. Rodriguez, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."))

The Ninth Circuit has similarly held that "the purpose of habeas remedies is to 'put the [petitioner] back in the position he would have been in if the [constitutional] violation never occurred.'" Lujan v. Garcia, 734 F.3d 917, 935 (9th Cir. 2013) (quoting Nunes v. Mueller, 350 F.3d 1045, 1057 (9th Cir. 2003)); accord Chioino v. Kernan, 581 F.3d 1182, 1184 (9th Cir. 2009). Thus, "[a]s has been found in countless similar cases in this Circuit, the appropriate remedy in such cases is to order Petitioner placed in the position he would have been absent the due process violation—that is, he should be released from custody on the conditions that were initially imposed." Iurii Mazurov v. Desert Annex Det. Facility, No. 5:26-CV-02236-BFM, 2026 WL 1365164, at *4 (C.D. Cal. May 8, 2026) (citing cases); see also Changoluiza Corrales v. D. Marin, No. EDCV 26-01716-KK-RAOX, 2026 WL 1047934, at *6 (C.D. Cal. Apr. 15, 2026) (citing Pablo Sequen v. Albarran, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025)); Morales, , 2026 WL 1026234, at *7 ("join[ing] numerous of its sister courts in finding that Petitioner's detention is unlawful" due to unlawful parole revocation and ordering release notwithstanding prior TRO providing a bond hearing and collecting cases); Gutierrez v. Semaia, No. 5:26-CV-01181-HDV, 2026 WL 916773, at *2 (C.D. Cal. Mar. 27, 2026); Domingo, 2025 WL 1940179, at *3 (similar).

As one court in this district has aptly put it, "[t]he Court must heed the language in Mathews that '[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing.'" Villegas Molina v. Mullin, No. 2:26-CV-04091-MWC-SP, 2026 WL 1182194, at *3 (C.D. Cal. Apr. 23, 2026) (quoting Mathews, 424 U.S. at 331). Accordingly, this Court and various others have ordered release even where a belated bond hearing has taken place. See Charaf, 2026 WL 1270754, at *6; Mumaev, 2026 WL 530765, at *6; see also Singh, 2026 U.S. Dist. LEXIS 95798, at *16-17;

Medrano-Rocha v. Santacruz, No. CV-26- 00404-KK-AGRX, 2026 WL 411355, at *6 (C.D. Cal. Jan. 23, 2026) ("Providing Petitioner with a post-detention hearing or other procedural remedy will not redress the constitutional violation Petitioner has suffered in being re-detained without a predeprivation hearing required by due process."); Saballos Rosales v. Noem, No. 5:26- CV-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) ("[T]he post-detention process that Rosales did receive, and will receive, 'is no substitute for the pre-detention process she was owed.'" (quoting Hasratyan v. Bondi, No. 5:26-CV00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026))). Such is the proper remedy here.

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing

evidence that he is presently a flight risk or danger to the community."). Thus, the Court concludes that the Petition must be granted with the foregoing prospective injunctive relief.

For the reasons stated above, the Court finds that Petitioner's re-detention was unlawful, orders his forthwith release subject only to reasonable conditions of release, and enjoins the Government from re-detaining Petitioner absent seven days' notice and an opportunity to be heard with his counsel present.

## IV.

## ORDER

**IT IS ORDERED:**

(2) the Petition is **GRANTED**;

(3) Respondents are **ORDERED** to immediately release Petitioner **S.B. (A Number 240-779-768)** from custody subject only to reasonable conditions of supervision;

(4) **Respondents** are **ORDERED** to return all of Petitioner's belongings, including his identification documents, work authorization documents, passport, and other possessions;

(5) Respondents are **ORDERED** to file a statement within one business day of Petitioner's release, attesting to Respondents' compliance with this Order; and

(5) Respondents are **ORDERED** to not re-detain Petitioner unless Respondents provide at least seven days' notice to Petitioner and his counsel that they will seek a pre-deprivation custody hearing before a neutral arbiter. At such a hearing, the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community, and that there are no conditions that will reasonably assure Petitioner's appearance and public safety, and that the arbiter consider Petitioner's ability to pay and alternatives to detention.

Dated: November 20, 2026

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge